UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TAMMY COOPER, CROSS OVER
THERAPY, LLC AND KENDALL
"KEN" BROWN

CIVIL ACTION

VERSUS

NO. 16-259-EWD (CONSENT)

PRIMARY CARE SOLUTIONS, INC.,
WILLIAM BULLOCK, MONICA
LEWIS, AND KIM ROUNDTREE

## RULING AND ORDER ON MOTION TO DISMISS UNDER FRCP 12(B)(2) AND 12(B)(6)

Before the court is a Motion to Dismiss Under FRCP Rule 12(b)(2) and 12(b)(6) (the "Motion to Dismiss"), filed by defendants, Primary Care Solutions, Inc. ("PCS"), William Bullock ("Bullock"), Monica Lewis ("Lewis"), and Kim Roundtree ("Roundtree") (collectively PCS, Bullock, Lewis and Roundtree are "Defendants").[1]  The Motion is opposed.[2]  Defendants filed a Reply Memorandum[3] and a Supplemental Memorandum[4] in support of their Motion.  For the reasons that follow, **IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file an Amended Complaint, within twenty-one (21) days of this Ruling and Order setting forth: (1) the domicile of the individual plaintiffs; and (2) the citizenship of each of the member(s) of Cross Over Therapy, LLC in accordance with the requirements of § 1332(a) and (c).  To the extent Plaintiffs believe the

---

[1] R. Doc. 10.

[2] R. Doc. 14.

[3] R. Doc. 15.

[4] R. Doc. 18.

1

deficiencies discussed herein with regard to the court's rulings pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2) can be remedied, Plaintiffs may also amend the substantive allegations set forth in their Complaint.  **IT IS FURTHER ORDERED** that Plaintiffs' Amended Complaint may be filed within twenty-one (21) days of this Ruling and Order without further leave of court.

**IT IS FURTHER ORDERED** that a scheduling conference in this matter is hereby set for **May 25, 2017 at 10:00 a.m.**[5]  The parties are **ORDERED** to file an Amended Joint Status Report by May 11, 2017.

## I.      Factual and Procedural Background

Tammy Cooper ("Cooper"), Cross Over Therapy, LLC ("COT"), and Kendall Brown ("Brown") (collectively Cooper, COT and Brown are "Plaintiffs"), filed their original Complaint on April 22, 2016, alleging violations of the Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.* (the "FTCA"), and the Fair Labor Standards Act, 29 U.S.C. § 216(b) (the "FLSA"), as well as Louisiana state law claims for unfair and deceptive trade practices, violations of Louisiana securities law, breach of contract, interference with contracts, conversion and unjust enrichment. Plaintiffs allege Bullock, Lewis and Roundtree (the "Individual Defendants") are alter egos of PCS and that Defendants collectively induced Plaintiffs to enter into a franchise investment scheme. Plaintiffs seek to recover lost profits, attorney's fees and costs, treble damages, damages for lost investment opportunities, return of any and all investments, wages, and loss of property value.

The case arises from contractual relationships between Cooper and PCS and Brown and PCS.  Specifically, in April 2014, Cooper executed a Site Director Consultant Agreement with PCS whereby Cooper was to serve as a Site Director in Donaldsonville, Louisiana.[6]  Brown

---

[5] On August 4, 2016, the court canceled the scheduling conference in this matter in light of the pending Motion to Dismiss.  R. Doc. 23.

[6] R. Doc. 14-1 at 7-8.  Plaintiffs allege that in February 2015 PCS entered into a second contract with COT to be the site director of the Donaldsonville office.  R. Doc. 1, ¶ 31.  Per Cooper's affidavit, COT is a limited liability company

executed a Site Director Consultant Agreement with PCS in July 2014, whereby he was to serve as a Site Director in St. Francisville, Louisiana.[7] Plaintiffs allege they were misled by Defendants into investing in what Plaintiffs believed to be franchises of PCS without providing Plaintiffs with appropriate disclosures, and that PCS ultimately sold the offices established by Cooper and Brown to Seaside HCBS, LLC ("Seaside") without paying Plaintiffs a percentage of the profits derived from the sale.[8]

In response to the Complaint, Defendants filed the instant Motion to Dismiss, which seeks dismissal of the claims against the Individual Defendants for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and seeks dismissal of certain causes of action set forth in the Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. Civ. P. 12(b)(6).

## II.    Law and Analysis

### A.  Personal Jurisdiction Over the Individual Defendants

Fed. R. Civ. P. 12(b)(2) authorizes dismissal of an action where the court lacks personal jurisdiction over a defendant.   "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Laplan*, 686 F.2d 276, 280 (5th Cir. 1982)).   When, as in this case, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a

---

owned by Cooper.  R. Doc. 14-1, ¶ 20 ("Without cancelling the contract originally entered into with me, in February 2015, while I was in Louisiana, Primary Care Solutions, Inc. entered into a second contract with me through an LLC owned by me, Cross Over Therapy, LLC, to be the site director and backdated the contract to be effective to May 1, 2014.").

[7] R. Doc. 14-3 at 5-6.

[8] Throughout their Complaint, Plaintiffs also allege that the contracts with PCS contained invalid non-competition clauses.  *See*, R. Doc. 1, ¶¶ 12, 53, 62.  However, Plaintiffs do not allege that Defendants have sought to enforce the allegedly invalid clauses, and no determination regarding the enforceability of the clauses has been moved for by either party.

*prima facie* showing of personal jurisdiction.  *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Buillion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted)).  "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists."  *Id.* ("Proof by preponderance of the evidence is not required.").  However, in assessing whether the plaintiff has presented a *prima facie* case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.'"  *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed. Appx. 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).  The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

### 1.  Plaintiffs Only Allege Specific Jurisdiction

"A nonresident defendant's contacts may support either specific or general jurisdiction." *Service Steel Warehouse, Co. L.P. v. Eakin*, 2011 WL 3439132, at * 2 (M.D. La. Aug. 5, 2011). "Specific jurisdiction over a nonresident defendant is present where the 'suit arises out of or [is] related to the defendant's contacts with the forum....'"  *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Clemens v. McNamee*, 615 F.3d 374, 378–379 (5th Cir. 2010) (stating that "[s]pecific jurisdiction ... requires a sufficient nexus between the nonresident's contacts with the forum and the cause of action").  "Alternatively, general jurisdiction exists 'when a nonresident defendant's contacts with the forum are substantial, continuous, and systematic.'" *Id.* (citing *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d

602, 609 (5th Cir. 2008)).  Here, Plaintiffs do not argue that the Individual Defendants are subject to general personal jurisdiction in Louisiana.[9]  Accordingly, the applicable inquiry is whether the Individual Defendants are subject to this court's specific personal jurisdiction.

The Fifth Circuit has set forth a three-step analysis for specific personal jurisdiction, whereby the court considers:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "A defendant has minimum contacts with a forum state if 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."  *Burger King*, 471 U.S. at 474.  "Even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact."  *Nuovo Pignone*, 310 F.3d at 379.  "Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."  *Id.* (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).

In their Complaint, Plaintiffs allege that the Individual Defendants are the "alter egos" of PCS.[10]  Plaintiffs allege that Bullock is the president and sole shareholder of PCS, and that Lewis

---

[9] *See*, R. Doc. 14, p. 2 ("The compliant [sic] does acknowledge that the individual defendants do not live in Louisiana, but the compliant [sic] does allege that they have committed offenses and quasi offenses against the plaintiffs as will be sufficient to establish personal jurisdiction as discussed below.").

[10] R. Doc. 1, ¶ 4.

5

and Roundtree are directors of PCS.[11]  Plaintiffs allege that "[d]uring a presentation meeting, Kendall 'Ken' Brown and others were told that the company had decided to franchise Primary Care Solutions."[12]  Plaintiffs further allege that "[i]n early 2014, Tammy Cooper and Kendall 'Ken' Brown were approached by their employer and PCS alter egos, William Bullock, Monica Lewis and Kim Roundtree at different times and asked if each would be interested in starting their own satellite agency of PCS"[13] and that "[b]ased on discussions and email communications, Tammy Cooper and Kendall Brown were lead to believe that they were investing in starting a new site agency of PCS in which they had a vested ownership interest."[14]  The Complaint specifically references a March 11, 2014 email from Roundtree to Cooper (with Bullock and Lewis copied),[15] a June 11, 2014 "electronic message" from Lewis and Roundtree,[16] and a February 4, 2015 email exchange with "the PCS alter egos, William Bullock, Kim Roundtree and Monica Lewis" regarding whether "they would sign 'a franchise agreement for an extended amount of time.'"[17]

In opposition to the Motion to Dismiss for lack of personal jurisdiction, Plaintiffs provide affidavits from Cooper and Brown.[18]  In her affidavit, Cooper asserts that the Individual

---

[11] R. Doc. 1, ¶¶ 5-7.

[12] R. Doc. 1, ¶ 10.  The Complaint does not allege that Tammy Cooper was present at this meeting, when or where the meeting took place, or who allegedly told Brown this information. *See also*, R. Doc. 1, ¶ 21 ("PCS and its alter egos coerced PCS employee, Tammy Cooper, into signing an agreement that promised her 40% of the net profits of the Donaldsonville office that she set up; once, her monthly sweat investment reached $25,000.00.").

[13] R. Doc. 1, ¶ 16.  The Complaint does not specify when in 2014 the individual plaintiffs were approached, by whom, where, by what method, or what they were told.

[14] R. Doc. 1, ¶ 17.  The Complaint does not provide any specifics regarding these discussions and communications. To the extent that Plaintiffs seek to "simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant for purposes of establishing jurisdiction over non-resident defendants," this court has previously rejected such collective allegations.  *See*, *Firefighters' Retirement System v. Citco Group Limited*, 2016 WL 5799298, at * 7 (M.D. La. Sept. 30, 2016) (internal citations omitted).

[15] R. Doc. 1, ¶¶ 18-19.

[16] R. Doc. 1, ¶ 26.

[17] R. Doc. 1, ¶ 40.

[18] R. Docs. 14-1 & 14-3.

Defendants made periodic visits to the Louisiana and also communicated with her via phone, text messages, and emails.[19]  Cooper further alleges that her initial contract with PCS was signed while she was in Louisiana,[20] and that the Individual Defendants communicated with her through telephone conversations and text messages regarding the Donaldsonville office while she was in Louisiana.[21]  Similarly, Brown asserts that he met with Bullock in Louisiana three to four times between 2014 and 2015, and that he spoke with him "at the PCS Christmas party that was held in Louisiana."[22]  Brown also asserts that Roundtree and Lewis "would come to meet with us in Louisiana during the third (3rd) week of each month and stay the entire week to check on operations in the Louisiana offices"[23] and that the "presentation meeting" referenced in the Complaint "occurred in 2014 in Louisiana in the Baton Rouge office.  William Bullock, Kim Roundtree, and Monica Lewis were present at the meeting when I, and others were told that the company had decided to franchise Primary Care Solutions."[24]  Brown asserts that the Individual Defendants

---

[19] R. Doc. 14-1, ¶ 5 ("Kim Roundtree and Monica Lewis made visits to Louisiana on the average of about once per month between December 2012; when, I started providing contract services to Primary Care Solutions…and I communicated with them by email, text messages, and telephone on the average of serval times per week from my Baton Rouge or Donaldsonville, Louisiana offices or while in transit on Louisiana highway, and they were in North Carolina."); ¶ 6 ("William Bullock made periodic visits to the Louisiana offices, I met with him during visits to the Louisiana offices, but more often, I communicated with him through emails and text messages from my Louisiana office."); ¶ 7 ("In early 2014, I was approached by William Bullock, Monica Lewis and Kim Roundtree at different times via telephone conversations, text messages, emails, and in person visits to the Baton Rouge Office about starting my own satellite agency of PCS in Donaldsonville, LA.").

[20] R. Doc. 14-1, ¶ 13.

[21] R. Doc. 14-1, ¶ 14 ("Attached are some of the emails and text messages between William Bullock, Kim Roundtree, and I referencing the Donaldsonville office as my office.  I was in Louisiana at the time that all emails and text messages were transmitted between us."); ¶ 16 ("While I was in Louisiana and [the Individual Defendants] were in North Carolina, they instructed me through telephone conversations and text messages….); ¶¶ 27 & 28 (discussing February 4, 2015 email Cooper sent to Lewis in North Carolina while Cooper was in Louisiana, and Lewis' response with copy to Bullock and Roundtree in North Carolina).

[22] R. Doc. 14-3, ¶¶ 4 & 5.

[23] R. Doc. 14-3, ¶ 6.

[24] R. Doc. 14-3, ¶ 8.  Plaintiffs do not specify what, if anything, the Individual Defendants told them during the "presentation meeting."

"negotiated the contract with me in both Louisiana and North Carolina,"[25] "stalled and interfered with my development of the St. Francisville, LA office"[26] and "came into Louisiana and sold all of the Louisiana office [sic] including the office that I development [sic] in St. Francisville…."[27]

Plaintiffs argue that "a court which has jurisdiction over a corporation has jurisdiction over its alter egos."[28]  Plaintiffs additionally assert that "if the tortious corporate activity is attributable to the corporate officer personally, then the acts of that corporation which constitute it as doing business in this state are attributable to the individuals for purposes of determining jurisdiction"[29] and that Defendants "completely ignore[] there [sic] persistent presence in the state through personal appearances, negotiating contracts in the state,[30] sending emails, text messages and phones calls to the plaintiffs."[31]

## 2. The Fiduciary Shield Doctrine Precludes the Exercise of In Personam Jurisdiction Over the Individual Defendants

"[T]he general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation…."  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).  As explained by the *Spademan* court, "the fiduciary-shield doctrine – which holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the

---

[25] R. Doc. 14-3, ¶ 11.

[26] R. Doc. 14-3, ¶ 13.  Brown does not specify how the Individual Defendants stalled or interfered with his development of the St. Francisville office.

[27] R. Doc. 14-3, ¶ 16.

[28] R. Doc. 14, p. 2 (citing *Jackson v. Tanfoglio Guiseppe, SRL*, 615 F.3d 579, 586 (5th Cir. 2010)).

[29] R. Doc. 14, p. 3 (citing *Odell v. Signer*, 169 So. 2d 851, 853-854 (Fla. Dist. Ct. App. 1964)).

[30] The court notes that the contracts at issue were between Plaintiffs and PCS.  Moreover, the Fifth Circuit has held that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws."  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

[31] R. Doc. 14, p. 3.

corporation." *Id.  See also*, *FloQuip, Inc. v Chem Rock Technologies*, 2016 WL 4574436, at * 12 (W.D. La. June 20, 2016) ("The fiduciary shield doctrine holds that an individual's transaction of business within a state solely as a corporate officer does not create personal jurisdiction over that individual, though the state may have personal jurisdiction over the corporation."); *Service Steel Warehouse, Co., L.P. v. Eakin*, 2011 WL 3439132, at * 2 (M.D. La. Aug. 5, 2011) ("The Court notes that the cause of action is based on alleged representations made by the defendant in his role as the corporate representative of a Louisiana corporation.  The Fiduciary Shield Doctrine, however, provides that 'an individual's transaction of business within a state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation.'") (citing *Spademan*).

"Although the general rule is that jurisdiction over a corporate officer cannot be predicated upon jurisdiction over a corporation, two exceptions to the fiduciary shield doctrine have been recognized. First, courts may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the 'alter ego' of the officer." *FloQuip, Inc. v Chem Rock Technologies*, 2016 WL 4574436, at * 12 (W.D. La. June 20, 2016) (citing *Spademan*, 772 F.2d at 1197) ("courts have recognized an exception to this rule when the corporation is the alter ego of the individual.").  "Second, the court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort directed at the forum state." *Id.  See also*, *General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. Appx. 775, 795 (5th Cir. 2007) ("So while the fiduciary-shield could prohibit this court from ascribing acts of Wireless Toyz to Simtob, it does not prohibit Simtob from being held personally liable for his own tortious conduct simply because he is an officer of a corporation."); *Dykes v. Maverick Motion Picture Group, LLC*, 2011 WL 900276, at * 5 (M.D. La. March 14, 2011) ("for a court to exercise jurisdiction over a corporate

representative, the individual must have personally engaged in activities within the forum state which would bring him within the state's long-arm statute, for instance, by committing a tort, such as fraud, in the forum state.") (internal citations omitted); *Sheriff's Office of St. Tammany Parish v. Nathan*, 2015 WL 3651343, at * 5 (E.D. La. June 11, 2015) ("The exception provides that the fiduciary shield doctrine will not defeat personal jurisdiction where a non-resident corporate agent commits a tort within the forum state which would subject him to personal liability under the laws of that state."); *Southeast Wireless Network, Inc. v. U.S. Telemetry Corp.*, 954 So.2d 120, 128 (La. 2007) ("The court in [*Escoto v. U.S. Lending Corp.*, 675 So.2d 741 (La. App. 4 Cir. 1996)] went on to recognize an exception to the fiduciary shield doctrine, which provides that the fiduciary shield doctrine will not defeat personal jurisdiction where a non-resident corporate agent commits a tort within a forum state which would subject him to personal liability under the laws of that state.").

The court notes at the outset that although Plaintiffs' allegations and the relevant Affidavits indicate that the Individual Defendants negotiated contracts with Plaintiffs and communicated thereafter with Plaintiffs on behalf of PCS, Plaintiffs have not alleged that the Individual Defendants had any personal contacts with Plaintiffs outside of the Individual Defendants' capacities as representatives of PCS. *See*, *Ostrowiecki v. Aggressor Fleet, Ltd.*, 2008 WL 2313140, at * 6 (E.D. La. May 30, 2008) ("[D]ue to the fiduciary shield doctrine, Chinchilla's individual and personal contacts with Louisiana must be assessed. The negotiation of the franchise agreement and these communications between Chinchilla and AFFI in Louisiana were on AMO's behalf…"); *Downs v. Red River Shipping Corp.*, 1994 WL 148729, at * 3 (E.D. La. April 18, 1994) ("[T]he Court notes that the plaintiff does not allege any contacts by Gregory other than those made while acting in his corporate capacity on behalf of Red River….Thus, even if the Court were to find that

it had personal jurisdiction over Red River, Mr. Gregory's contacts with Louisiana on behalf of Red River, without more, would not subject him to personal jurisdiction of this Court.  Because Gregory has no contacts with Louisiana other than those growing out of his work for Red River, the Court cannot exercise personal jurisdiction over him and this action must be dismissed as to Rodney Gregory.").

### a. Plaintiffs Have Not Alleged Sufficient Facts to Establish the Individual Defendants are Alter Egos of PCS

Plaintiffs assert throughout their Complaint that the Individual Defendants are the "alter egos" of PCS, but they have provided no basis to support such a finding.  In his Declaration, William Bullock asserts that "[a]t all applicable times, Primary Care Solutions maintained a separate legal existence.  For example Primary Care Solutions filed Articles of Incorporation with the North Carolina Secretary of State, filed annual reports, appointed an agent, maintained its own separate bank accounts, and observed other corporate formalities."[32]   Plaintiffs have not controverted this assertion and have provided no basis for their position that the Individual Defendants should be considered the "alter egos" of PCS for purposes of the personal jurisdiction analysis.  *See*, *Spademan*, 772 F.2d at 1197 (noting factors that have been considered in determining whether a corporation was the alter ego of its dominant shareholder, including whether the corporation is undercapitalized, does not keep separate books or finances, is used to promote fraud or illegality, does not follow corporate formalities, and is merely a sham.); *Dykes v. Maverick Motion Picture Group, LLC*, 2011 WL 900276, at * 5 (M.D. La. March 14, 2011) ("In determining whether to 'pierce the corporate veil' under an alter-ego theory, courts consider factors such as whether a corporation was adequately capitalized for the undertaking, whether the

---

[32] R. Doc. 10-2, ¶ 10.

corporation was solvent, whether the entity paid dividends to the shareholders, whether officers and directors acted properly, and whether the corporation acted as a façade for the dominant shareholder."); *Green v. Freeman*, 367 N.C. 136, 270 (N.C. 2013) ("Evidence upon which we have relied to justify piercing the corporate veil includes inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records.").[33]   Accordingly, the court does not find that personal jurisdiction over the Individual Defendants can be exercised based on their alleged status as the "alter egos" of PCS.

### b. Plaintiffs Have Not Alleged the Individual Defendants Committed Intentional Torts with the Requisite Specificity

Further, Plaintiffs have not asserted that the Individual Defendants committed intentional torts that would subject the Individual Defendants to personal liability.  While "[f]raud, of course, is an intentional tort," *Frees, Inc. v. McMillian*, 2007 WL 2701200, at * 3 (W.D. La. June 25, 2007) (citing *In re Mercer*, 246 F.3d 391, 421 (5th Cir. 2001)), as discussed below with respect to Plaintiffs' claim under the LUTPA, although Plaintiffs generally allege that they were "coerced" into signing the contracts with PCS, they have not alleged any specific fraud, misrepresentation, deception, or unethical conduct in the negotiation of their contracts with PCS.  Moreover, while the court recognizes that Plaintiffs have alleged that the Individual Defendants are "liable jointly and severally" for violations of Louisiana securities law,[34] as discussed herein, Plaintiffs own

---

[33] Defendants assert that because PCS is a North Carolina corporation, North Carolina law should control the question of whether the Individual Defendants are alter egos of PCS.  *See*, R. Doc. 10-1, pp. 5-6.  Plaintiffs do not address choice of law in their briefing.  However, because the factors to be considered are substantially similar, and in light of the fact that Plaintiffs have not controverted Mr. Bullock's attestations regarding the separate corporate identity of PCS, the undersigned does not find there to be a conflict of law question presented.  *See*, *Bilyeu v. Johanson Berenson LLP*, 2010 WL 3896415, at * 5 (W.D. La. Sept. 30, 2010) ("If the laws of two states are substantially similar such that they would yield the same resolution of a particular [issue] then there is no conflict and no need for a conflict of laws analysis.").

[34] R. Doc. 1, ¶ 66.

allegations are contrary to a finding that the agreements at issue constitute investment contracts, and the court finds that Plaintiffs have failed to state a claim under Louisiana securities law. Likewise, with respect to Plaintiffs' claim of interference with contract against the Individual Defendants, Plaintiffs have not alleged that any Individual Defendant acted outside the scope of their corporate authority or knowingly committed an act adverse to the interests of PCS.

Because Plaintiffs have provided no basis upon which this court can apply an exception to the fiduciary shield doctrine, the court GRANTS Defendants' Motion to Dismiss Plaintiffs' claims against the Individual Defendants for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

### B.  Rule 12(b)(6) Failure to State a Claim[35]

In addition to asserting that Plaintiffs' claims against the Individual Defendants should be dismissed for lack of personal jurisdiction, Defendants also assert that certain of Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.[36]  A motion filed pursuant to Rule 12(b)(6) challenges the sufficiency of a plaintiff's allegations.  "When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or the nonmoving party."  *Freeman v. Rubin*, 2012 WL 820472, at * 1 (W.D. La. March 8, 2012) (citing *Gogreve v. Downtown Development District*, 426 F.Supp.2d 383, 388 (E.D. La. 2006)).  *See also*, *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999.  To avoid dismissal pursuant to Rule 12(b)(6), Plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 US

---

[35] Because the court finds that it lacks in personam jurisdiction over the Individual Defendants, the court generally considers Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) as seeking dismissal of particular claims against PCS.  However, where Defendants' Motion to Dismiss a particular claim pursuant to Fed. R. Civ. P. 12(b)(6) is directed solely to Plaintiffs' cause of action against the Individual Defendants, the court has also addressed that purported basis for dismissal in this section.

[36] Defendants do not seek dismissal of Plaintiffs' breach of contract claim against PCS.

544 (2007).  "Rule 8 does not require 'detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Brand Coupon Network, LLC v. Catalina Marketing Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted)).  As this court has previously explained "[s]tated differently, a complaint must state 'more than labels and conclusions'; 'a formalistic recitation of the elements of a cause of action will not do.'"  *Rodrigue v. Seafood Source of Louisiana, Inc.*, 2014 WL 4986840, at * 2 (M.D. La. Sept. 15, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### 1.  Louisiana Unfair Trade Practices Act ("LUTPA")

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  La. R.S. § 51:1405(A).  "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case-by-case basis."  *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).  *See also*, *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So. 3d 1053, 1059 (La. 2010) ("It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition.") (citing *Dufau v. Creole Engineering, Inc.*, 465 So.2d 752, 758 (La. App. 5 Cir. 1985) (In order to recover under LUTPA a plaintiff must prove "some element of fraud, misrepresentation, deception, or other unethical conduct" on the part of the defendant.)).  "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"  *Cheramie*, 35 So. 3d at 1059 (citations omitted).  The Louisiana Supreme Court has explained that "the range of prohibited practices under LUTPA is extremely narrow."  *Cheramie*, 35 So. 3d at 1060.  Further, the Fifth Circuit has held that "the statute does not provide

an alternate remedy for simple breaches of contract.  There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Turner*, 989 F. 2d at 1422.  *See also*, *Innovative Sales, LLC v. Northwood Mfg., Inc.*, 2008 WL 3244114, at * 6 (5th Cir. 2008) ("Innovative argues that the same actions taken by Northwood that support a breach of contract claim also support a LUTPA claim.  This argument, however, is foreclosed by *Turner v. Purina Mills, Inc.*, wherein this court expressly acknowledged that LUTPA 'does not provide an alternate remedy for simple breaches of contract,' noting that '[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.'").

Defendants argue that "Plaintiffs are attempting to obtain an alternative remedy for simple breach of contract."[37]  In response, Plaintiffs assert that they have stated a claim under the LUTPA because Defendants "solicited [Plaintiffs] to invest in a purported franchise investment scheme without following federal or Louisiana franchising or security laws;" and "coerced plaintiffs to sign contracts with an oppressive non-complete clause, invest in PSC and set up satellite offices that promised to pay 40% of the profits monthly after a $25,000.00 sweat equity investment…" and thereafter "sold certain named offices including the satellite offices established by Cooper and Brown to Seaside HCBS, LLC without paying Cooper/Cross Over Therapy, LLC or Brown any percentage of the profits from the sale of their offices to Seaside."[38]

To the extent Plaintiffs rely on the alleged failure to provide franchise disclosure documents as a basis for their LUTPA claim, the only Louisiana court to consider this issue has found that "the failure to comply with the FTC disclosure regulations did not constitute an unfair

---

[37] R. Doc. 10-1, p. 10.

[38] R. Doc. 14, p. 5.  *See also*, R. Doc. 1, ¶ 53 (alleging Defendants engaged in practices prohibited under the LUTPA "including but not limited to coercing and inducing present employees, Tammy Cooper, and Kendall 'Ken' Brown…and Cross Over Therapy to enter into a franchise investment scheme and fraudulent investment contracts with unlawful non-compete clauses to prevent them from opening their own competing business; then, selling the Donaldsonville and St. Francisville office on May 5, 2015 to Seaside….").

trade practice" where there was "no element of fraud, misrepresentation, deception or unethical conduct in the confection of the franchise agreement." *Leblanc v. Belt Center Inc.*, 509 So. 2d 134, 137 (La. App. 1 Cir. 1987). *See also*, *Brill v. Catfish Shaks of America, Inc.*, 727 F.Supp. 1035, 1041 n. 12 (E.D. La. 1989) (noting that although Federal Trade Commission regulations provide that it is an unfair or deceptive act or practice for a franchisor to fail to provide the franchisee with a disclosure document, the court would be "bound to follow" the holding of *Leblanc* "that the failure to provide a disclosure document is not *per se* violative of Louisiana's UTPA because an unfair trade practice requires a showing of fraud, misrepresentation, deception, or unethical conduct" if plaintiffs' LUTPA claim was not otherwise time barred).   Plaintiffs have not outlined in their Complaint how they contend they were "coerced" into signing the contracts with PCS, and, as discussed below, have not alleged any specific fraud, misrepresentation, deception, or unethical conduct in the negotiation of their contracts with PCS.

The Fifth Circuit has instructed that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). *See also*, *Alford v. Anadarko E&P Onshore, LLC*, 2014 WL 1612454, at * 8 (E.D. La. April 22, 2014) (same).   "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud even if the term 'fraud' is not used." *Wagoner v. Exxon Mobil Corp.*, 2010 WL 3168382, at * 2 (E.D. La. Aug. 9, 2010) (citing *In re Hollander*, 2009 WL 2707445, at * 4 (E.D. La. Aug. 25, 2009)).[39] Fed. R. Civ. P. 9(b) "imposes a heightened level of pleading for fraud claims: 'In all averments of fraud or

---

[39] Under Louisiana law, fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction." La. Civil Code art. 1953.  *See also*, *Guidry v. U.S. Tobacco Co., Inc.* 188 F.3d 619, 627 (5th Cir. 1999) ("The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury.").

mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). *See also*, *Max Access, Inc. v. Gee Cee Co. of LA, Inc.*, 2016 WL 454389, at * 2 (E.D. La. Feb. 5, 2016) ("For claims alleging fraud, a Rule 12(b)(6) motion should be granted if the complaint fails to plead the conduct constituting fraud with particularity."); Fed. R. Civ. P. 9(b).  The Fifth Circuit requires that a pleading of fraud set out the time, place, and contents of the false misrepresentation, as well as the identity of the person making the misrepresentation and why the statements were fraudulent. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-178 (5th Cir. 1997).  "'What constitutes 'particularity' will necessarily differ with the facts of each case….' 'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) and *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)).  Here, although Plaintiffs allege that Defendants engaged in fraudulent conduct in general terms throughout their Complaint, Plaintiffs fail to provide any specifics with regard to what was said to them, by whom it was said or where, and what (especially with respect to the Individual Defendants) was obtained thereby.  For example, Plaintiffs allege that PCS used "deceptive practices,"[40] that the Individual Defendants "coerc[ed] and induc[ed]" Plaintiffs into entering "into a franchise investment scheme and fraudulent investment contracts,"[41] and that Defendants "devised an unethical, oppressive, and unscrupulous scheme that offends established public policy that amounts to fraud, deceit, and misrepresentation by soliciting

---

[40] R. Doc. 1, ¶ 36.

[41] R. Doc. 1, ¶ 53.

[Plaintiffs]....without following federal or Louisiana security laws;"[42] however, Plaintiffs' Complaint is lacking in any specifics setting out the time, place, contents, and speaker of the allegedly false representations coercing and inducing them into entering into the agreements at issue.

Plaintiffs' allegations are more akin to a breach of contract claim than the sort of "egregious" behavior contemplated by LUTPA. Under such circumstances, dismissal of Plaintiffs' claim under LUTPA is appropriate. *See*, *Nussli US, LLC v. Nola Motorsports Host Committee, Inc.*, 2016 WL 4064011, at *11 (E.D. La. July 29, 2016) (granting motion to dismiss LUTPA claim against particular defendant where plaintiff did not plead "any false or misleading statements allegedly made by" the defendant and the "core" of plaintiff's allegations was "a claim that [defendant] failed to pay it the amount it was due under its contract....[T]he law is clear that LUTPA does not provide an alternate remedy for simple breaches of contract. [Plaintiff's] bare assertions of deceptive conduct on the part of [defendant] are insufficient to constitute deception, unethical conduct, or egregious behavior that would constitute a claim pursuant to LUTPA."); *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F.Supp.2d 602, 613 (E.D. La. 2015) (granting summary judgment on plaintiffs' LUTPA claim because claim was " 'more similar to a breach of contract claim than to a claim for the egregious behavior covered under LUTPA'" and noting that "Plaintiffs cannot manufacture a LUTPA violation by simply adding the words 'deceit' and 'misrepresentation' to their contract claim.") (quoting *Target Constr., Inc. v. Baker Pile Driving & Site Work, LLC*, 2012 WL 5878855, at * 4 (E.D. La. Nov. 20, 2012)); *Guillory v. Broussard*, 194 So. 3d 764, 778 (La. App. 3 Cir. 2016) ("Defendant's failure to abide by his contractual agreement with Plaintiff regarding distribution of profits sufficient for Plaintiff to pay her taxes

---

[42] R. Doc. 1, ¶ 64.

annually in exchange for her agreement to convert SBT to an S Corporation, presents a general breach of contract claim.  It does not meet the criteria for finding a special LUTPA violation."). *See also*, *Shaw Industries, Inc. v. Brett*, 884 F.Supp. 1054, 1058 (M.D. La. 1994) ("since the Fifth Circuit has explicitly stated that LUTPA does not provide an alternate remedy for breach of contract, summary judgment is proper.").[43]   Accordingly, the court GRANTS Defendants' Motion to Dismiss Plaintiffs' claims under the LUTPA.

## 2. Federal Trade Commission Act ("FTCA")

Defendants assert that even assuming *arguendo* that the parties' agreements meet the federal definition of a franchise, "the FTCA does not provide for private causes of action"[44] and therefore this claim should be dismissed.  Plaintiffs do not address this contention in their opposition.[45]

The court agrees with Defendants that Plaintiffs' FTCA claim must be dismissed.  "The Federal Trade Commission Act (FTC Act) does not provide for private causes of action." *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 176 (5th Cir. 2016).  *See also*, *Norman v. Torch, Inc.*, 1993 WL 149658, at * 2 (E.D. La. May 4, 1993) ("the FTCA does not provide a private right of action.") (citing *Fulton v. Hecht*, 580 F.2d 1242, 1249 (5th Cir. 1978) ("there is no private cause of action for violation of the FTC Act.")); *Brill v. Catfish Shaks of America, Inc.*, 727 F.Supp. 1035, 1041 (E.D. La. 1989) ("there is no private right of action for violation of the FTC's franchise

---

[43] Because the court dismisses Plaintiffs' LUTPA claims based on the theory that the statute does not provide an alternate remedy for breach of contract claims, the court does not reach Defendants' argument raised by supplemental memorandum that "Plaintiffs' LUTPA claims are prescribed on their face."  R. Doc. 18, p. 1.

[44] R. Doc. 10-1, p. 11.

[45] *See*, R. Doc. 14, pp. 6-7.  Instead, Plaintiffs review the allegations set forth in the Complaint and argue that they were "treated as investors" and that "[t]he necessary disclosures were not made to establish a franchise."  R. Doc. 14, p. 7.

disclosure rules.").  Accordingly, the court GRANTS Defendants' Motion to Dismiss Plaintiffs'

cause of action under the FTCA.

### 3.  Louisiana Securities Law

La. R.S. § 702(15)(a) defines a "security" as:

> any note; stock; treasury stock; bond; debenture; evidence of
> indebtedness; certificate of interest or participation in any profit-
> sharing agreement; collateral-trust certificate; preorganization
> certificate or subscription; transferable share; investment contract;
> voting-trust certificate; certificate of deposit for a security;
> fractional undivided interest in oil, gas, or other mineral rights; any
> put, call, straddle, option, or privilege on any security, certificate of
> deposit, or group or index of securities (including any interest
> therein or based on the value thereof); or, in general, any interest or
> instrument commonly known as a 'security'; or any certificate of
> interest or participation in, temporary or interim certificate for,
> receipt for, guarantee of, or warrant or right to subscribe to or
> purchase, any of the foregoing.[46]

Plaintiffs allege that Defendants solicited them to "invest in a purported franchise/stock investment

scheme" which falls within the scope of Louisiana securities laws.[47]   Defendants assert that

Plaintiffs' claims under Louisiana securities law should be dismissed because the agreements at

issue do not constitute "investment contracts."[48]   In their opposition, Plaintiffs do not address

Defendants' position and do not analyze whether the contracts at issue should be considered

securities or investment contracts.[49]

---

[46] The Securities Act of 1933 includes a substantially similar definition of "security" which also includes an "investment contract."  15 USC 77b(1).  *See also*, Securities Exchange Act of 1934, 15 USC § 78c(1).

[47] R. Doc. 1, ¶¶ 64-67.

[48] R. Doc. 10-1, pp. 11-14.

[49] The totality of Plaintiffs' opposition to dismissal of this claim is as follows: "For the reasons stated above, in the alternative, Primary Care Solutions, Inc. and its corporate officers violated Louisiana Blue Sky Law § 12:721.  Section 712 relative to unlawful practices for sale of stock.  Further, LSA-R.S. 51:714 sets forth civil liability from sales of securities in violation of law."  R. Doc. 14, p. 7.

"The provisions of the Louisiana Securities Law, (formerly known as Louisiana Blue Sky Law) are analogous to the provisions of the federal Securities Act of 1933.  Our courts therefore look to the federal law and jurisprudence interpreting the securities law for guidance in interpreting the Louisiana provisions."  *State v. Powdrill*, 684 So.2d 350, 353 (La. 1996) (internal citations omitted).  *See also*, *Macareno v. Karon*, 2010 WL 743564, at * 5 (W.D. La. Feb. 10, 2010) ("because the jurisprudence of Louisiana's securities law is relatively undeveloped, courts routinely turn to federal decisions in this area for guidance as the Louisiana law was modeled after the federal system.").

"An investment contract is a contract, transaction or scheme whereby (1) a person invests his money, (2) in a common enterprise, and (3) is led to expect profits solely from the efforts of the promoter or a third party."  *Nunez v. Robin*, 415 Fed. Appx. 586, 587 (5th Cir. 2011).  The Fifth Circuit has explained that with respect to the third element, "the critical inquiry is 'whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'"  *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 483 (5th Cir. 1974) (citing *SEC v. Glen W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir. 1973)).  *See also*, *Dufour v. U.S. Home Corp.*, 581 So.2d 765, 768 (La. App. 4 Cir. 1991) (affirming trial court's grant of exception of no cause of action because purchase of condominium units did not fit within the scope of a security under La. R.S. § 51:702 and explaining that to be an investment contract "[t]he profits expected from the investment must be achieved primarily from the efforts of the promoter or third party.").

In *Martin v. T.V. Tempo, Inc.*, 628 F.2d 887 (5th Cir. 1980), the Fifth Circuit considered whether a franchise agreement was a security.  The court considered the standard set forth in *Koscot* and reasoned that because "plaintiffs had immediate control over the essential managerial

conduct of the enterprise and defendants exercised merely remote control" and because "[t]he efforts of plaintiffs were the undeniably significant ones in determining profit and loss," the agreements at issue "were not securities." *Id*. at 891. *Compare*, *Koscot*, 497 F.2d at 484 (finding investment contract existed where "promoters retain[ed] immediate control over the essential managerial conduct of an enterprise and where the investor's realization of profits [was] inextricably tied to the success of the promotional scheme" and "acknowledg[ing] that a conventional franchise arrangement, wherein the promoter exercises merely remote control over an enterprise and the investor operates largely unfettered by promoter mandates presents a different question….").

Here, Plaintiffs own allegations are contrary to a finding that the agreements at issue constitute investment contracts. Plaintiffs allege that they were each required to make a "$25,000.00 sweat equity investment" to "start their own satellite offices"[50] in St. Francisville and Donaldsonville and that each Plaintiff "believed that they were purchasing a franchise."[51] Ms. Cooper alleges that she "set up"[52] the Donaldsonville office, and Mr. Brown alleges that he "invested a substantial amount of time and unpaid labor into establishing the St. Francisville office…."[53] Plaintiffs allege that the Donaldsonville office "was growing rapidly"[54] and that the St. Francisville office "was growing and showing a net profit as of April 2015"[55] due, presumably, to the efforts of Ms. Cooper and Mr. Brown, respectively. Such allegations, taken as true, run

---

[50] R. Doc. 1, ¶ 9.

[51] R. Doc. 1, ¶ 11.

[52] R. Doc. 1, ¶ 21.

[53] R. Doc. 1, ¶ 35.

[54] R. Doc. 1, ¶ 46.

[55] R. Doc. 1, ¶ 51.

counter to a characterization of the contracts as securities under Louisiana law.  Accordingly, the court GRANTS Defendants' Motion to Dismiss Plaintiffs' claims under Louisiana securities law.

### 4.  Breach of Contract Against the Individual Defendants

Defendants seek dismissal of Plaintiffs' breach of contract claim against the Individual Defendants based on Defendants' assertion that "Plaintiffs have not alleged any facts that would support a finding of alter ego status."[56]  Because the court has found it lacks personal jurisdiction over the Individual Defendants, the court also GRANTS Defendants' Motion to Dismiss Plaintiffs' breach of contract claim against the Individual Defendants.[57]

### 5.  Interference with Contract Against the Individual Defendants

Per their Complaint, Plaintiffs seek to bring a cause of action for interference with contract against the Individual Defendants.[58]  Defendants argue that under Louisiana law, "a tortious interference claim may lie against [the Individual Defendants] if they acted beyond the scope of their corporate authority or knowingly committed acts adverse to the interests of Primary Care Solutions."[59]

"Louisiana recognizes only a limited cause of action for intentional interference with contractual relations."  *Bollinger v. Tanner Companies, LP*, 2003 WL 1824836, at * 2 (E.D. La. April 7, 2003) (citing *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 231-234 (La. 1989)). "Under *Spurney*, a tortious interference claim may lie against [defendant] if she acted beyond the scope of her corporate authority or knowingly committed acts adverse to [corporation's] interests.

---

[56] R. Doc. 10-1, p. 14.

[57] The court notes that the contracts at issue all appear to be between Plaintiffs and PCS.  *See*, R. Docs. 10-4, 14-1, & 14-3.  The Individual Defendants are not parties to these contracts.  As discussed above with respect to this court's ability to exercise personal jurisdiction over the Individual Defendants, Plaintiffs have not sufficiently asserted a basis for their position that the Individual Defendants should be considered the "alter egos" of PCS.

[58] R. Doc. 1, ¶¶ 71-72.

[59] R. Doc. 10-1, p. 15.

If she acted *within* the scope of her corporate authority, then the proper vehicle for relief is a breach of contract claim against the corporation itself." *Bollinger*, 2003 WL 1824836, at * 2 (citing *Technical Control Systems, Inc. v. Green*, 809 So. 2d 1204, 1208 (La. App. 3 Cir. 2002) ("In an ordinary case, for example, where an officer breaches a contract for the benefit of his corporation and acts within his authority, the corporation, the party with whom the plaintiff has contracted, would be liable in contract, not tort.  We believe that tort actions against corporate entity defendants should be curtailed when a more appropriate breach of contract action is available.")).  Plaintiffs do not allege that any of the individual Defendants exceeded their authority or committed acts adverse to PCS.  Because the court has found it lacks personal jurisdiction over the Individual Defendants, the court also GRANTS Defendants' Motion to Dismiss Plaintiffs' interference with contract claim against the Individual Defendants.

### 6.  Conversion

In their Complaint, Plaintiffs assert a cause of action for conversion relative to the purchase of furniture and equipment by Cooper and/or COT for the Donaldsonville office.[60]  Specifically, Plaintiffs allege that "[d]espite knowing that Tammy Cooper/Cross Over Therapy purchased the furniture and equipment in the Donaldsonville agency office, paragraph 1.2(a) and Exhibit B of the contract between Seaside and Primary Care Solutions specifically includes the sale of all furniture and equipment in the Donaldsonville agency office that is the basis of the conversion."[61]

"'A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods depriving him of the possession, permanently or for an indefinite time, is a conversion.'"  *U.S. v. Hibernia Nat. Bank*,

---

[60] R. Doc. 1, ¶¶ 73-78.  Plaintiffs do not assert a cause of action for conversion relative to Brown; however, the analysis set forth herein would apply equally to any such claims.

[61] R. Doc. 1, ¶ 75.

882 F.2d 961, 964 (5th Cir. 1989).  In *Jarreau v. Quakenbush*, 687 F.Supp.2d 606, 612 (M.D. La. 2010), this court explained that:

> A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel. The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable, or in the alternative the plaintiff may demand compensation.

Plaintiffs assert a cause of action for conversion based on the contract between Seaside and PCS which allegedly included the sale of all furniture and equipment in the Donaldsonville office.[62] Defendants assert that this cause of action should be dismissed against PCS because "Plaintiffs have merely restated their claim for breach of contract.  Louisiana law will not permit the recovery of tort damages for claims that arise *ex contractu*."[63]

The court is unpersuaded that a cause of action may not lie under the facts as presented in Plaintiffs' Complaint.  Defendants rely on *New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey*, 40 So. 3d 394 (La. App. 4 Cir. 2010) for their position that Plaintiffs' claim of conversion should be dismissed as merely a restatement of their claim for breach of contract.  In *Kirksey*, plaintiff sought to be paid additional money under the parties' agreement and at the same time asserted that the failure to pay such monies constituted a conversion.  Under such circumstances, the court found that plaintiff had not alleged sufficient facts to support a finding that defendants "wrongfully converted" the rebates allegedly owed pursuant to the contract.  *Id*. at 406.  Here, in contrast, Plaintiffs allege that Defendants "breached the contracts with [Plaintiffs] when they failed

---

[62] R. Doc. 1, ¶ 75.

[63] R. Doc. 10-1, p. 16.

to pay profits in accordance with the contract [sic], and then, sold the Donaldsonville and St. Francisville offices to Seaside…."[64]  Plaintiffs further allege that the sale of the Donaldsonville office improperly included the sale of furniture and equipment that was owned by Cooper and/or COT.[65]  Although the alleged sale to Seaside appears to be the catalyst for both Plaintiffs' breach of contract and conversion claims, the claims as alleged are separate.  Plaintiffs do not allege that their contract with PCS required them to purchase furniture or equipment, and they do not allege that the sale of such furniture and equipment itself breached the contract(s) between Ms. Cooper/Cross Over Therapy and PCS.  The court does not read *Kirksey* as foreclosing such a claim. Accordingly, the court DENIES Defendants' Motion to Dismiss Plaintiff's cause of action for conversion against PCS.

Defendants further assert that, as to the Individual Defendants, "[a]bsent fraud, shareholders, directors, and officers are not personally liable for the debts of the corporation, especially when they deal with other corporations."[66]  Because this court has found that it lacks personal jurisdiction over the Individual Defendants, and because, as discussed above, Plaintiffs have not made any particularized allegations of fraud in their Complaint (as to the Individual Defendants or PCS), the court GRANTS Defendants' Motion to Dismiss Plaintiffs' cause of action for conversion against the Individual Defendants.

## 7.  Fair Labor Standards Act ("FLSA")

Pursuant to the FLSA, "no employer shall employ any of his employees who in any workweek…is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation

---

[64] R. Doc. 1, ¶ 69.

[65] R. Doc. 1, ¶ 75.

[66] R. Doc. 10-1, p. 16.

for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  In their Complaint, Plaintiffs allege that in the event this court determines that "the sweat equity investment was not an investment, then, plaintiffs are entitled to recover an hourly rate plus overtime for the unpaid hours of labor worked in the Donaldsonville and St. Francisville offices respectively."[67]  Plaintiffs allege that "[a]t all times…Defendants were the employer" of Plaintiffs[68] and that Defendants "should have paid plaintiffs for regular time plus overtime at rates not less than one and one-half times their proper regular rate for all hours worked over 40 hours per week in accordance with 29 U.S.C. §207."[69]

Defendants move to dismiss Plaintiffs' FLSA claims, arguing that "Plaintiffs have simply referenced a complex federal statute with virtually no factual context or support."[70]  Defendants assert that "[a]s a threshold issue, Plaintiffs do not allege that an employer-employee relationship existed during the unpaid periods"[71] and point out that the agreements at issue "provide that '[n]othing herein shall be construed to create an employer-employee relationship between the Company and the Contractor.  Contractor is an independent contractor and NOT an employee of the Company or any of its subsidiaries or affiliates.'"[72]  Defendants further argue that "Plaintiffs have failed to allege when they worked overtime and how much they were underpaid."[73]  The whole of Plaintiffs' Opposition to this portion of Defendants' Motion to Dismiss is as follows:

---

[67] R. Doc. 1, ¶ 80.

[68] R. Doc. 1, ¶ 81.

[69] R. Doc. 1, ¶ 83.

[70] R. Doc. 10-1, p. 19.

[71] R. Doc. 10-1, p. 17.

[72] R. Doc. 10-1, p. 17.

[73] R. Doc. 10-1, p. 18.

> Paragraphs 12, 14 and 15 specifically allege that Cooper and Brown were employees of PCS that were coerced into signing alleged independent contractor contracts in turn for a 40% profit sharing in their own satellite franchise offices that were sold to Seaside once the offices were built.  So, at all times, Cooper and Brown were employees who were not compensated in accordance with the Fair Labor Standards Act.[74]

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The "remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications."  *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2012) (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curium)).  "We rely on the economic reality test when determining a party's status as an employer under the FLSA."  *Id*.  Under this test, a court evaluates: "'whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'  However, a party need not establish each element in every case."  *Id*. (citing *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012).  The Fifth Circuit has suggested that, in appropriate circumstances, a franchisor may "qualify as the FLSA employer for a franchisee's employees."  *Id*. at 452 ("We do not suggest that franchisors can never qualify as the FLSA employer for a franchisee's employees; rather, we hold that [plaintiff] failed to produce legally sufficient evidence to satisfy the economic reality test and thus failed to prove that [defendant] was his employer under the FLSA.").  Further, "[t]he contractual designation of the worker as an independent contractor is

---

[74] R. Doc. 14, p. 9.  Paragraph 12 of the Complaint alleges that "PCS through its alter ego, President, William Bullock and alter ego directors, Monica Lewis and Kim Roundtree convinced its employees to sign contracts that contained invalid non-compete clauses for a period of 6 months that was not geographic specific."  Paragraph 14 alleges that that "[i]n December 2012, Tammy Cooper was employed in the Baton Rouge office of Primary Care Solutions, Inc. as a Licensed Mental Health Professional (LMHP)."  Paragraph 15 alleges that "[o]n February 9, 2012, Kendall 'Ken' Brown was employed in the Baton Rouge office of Primary Care Solutions, Inc. as a mental Health Professional."

not necessarily controlling." *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 845-846 (5th Cir. 2010).  "[T]he touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency." *Mendoza v. Essential Quality Constr., Inc.*, 691 F.Supp.2d 680, 685 (E.D. La. 2010).

As the undersigned reads the allegations of Plaintiffs' Complaint, Plaintiffs apparently worked relatively independently in setting up the offices at issue.  For example, Plaintiffs allege that Cooper herself leased space for the Donaldsonville office and "was instructed to purchase all of the office furniture, pay rent, and utilities out of her pocket….[75]  Similarly, Plaintiffs allege that Brown "leased office space in St. Francisville, LA, [and] invested a substantial amount of time and unpaid labor into establishing the St. Francisville office…."[76]  Although Plaintiffs allege that they were employed by PCS in 2012,[77] they have provided no basis upon which this court could find they have stated a plausible basis for being considered employees of Defendants following Plaintiffs' entry into the agreements at issue in 2014.  Moreover, Plaintiffs have failed to allege the regular or overtime hours they worked.  Under such circumstances, dismissal of Plaintiffs' FLSA claims is warranted.  *See*, *Altier v. Worley Catastrophe Response, LLC*, 2011 WL 1791292, at * 3 (E.D. La. May 9, 2011) (granting motion to dismiss FLSA claim where plaintiffs "asserted no facts or allegations that speak to the other four factors of the test" and offered "no facts or allegations to demonstrate that their relationship with [defendant] embodies the linchpin of the test-dependency."); *Crosby v. Cox Communications, Inc.*, 2016 WL 6403348, at * 4 (E.D. La. Oct. 27, 2017) (finding that plaintiffs' allegations that defendant controlled plaintiffs' ultimate employment, pay, hours, schedules, routes, conduct and dress sufficiently alleged an FLSA

---

[75] R. Doc. 1, ¶¶ 24 & 25.

[76] R. Doc. 1, ¶ 35.

[77] R. Doc. 1, ¶¶ 14 & 15.

employment relationship, but granting motion to dismiss FLSA claim where plaintiffs only alleged that they "'regularly worked over 40 hours in a workweek in order to complete their job assignments,' but the defendants 'did not pay…for all hours worked in order to avoid overtime payments'" and explaining that "plaintiffs' complaint contains no additional allegations, beyond repeating the statute, rendering plausible their allegation that the FLSA was violated."). *See also*, *Dejesus v. HF Management Services, LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (finding plaintiff did not adequately allege she worked overtime without proper compensation and affirming district court's grant of the motion to dismiss where plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content.  Indeed, her complaint was devoid of any numbers to consider beyond those plucked from the statute.  She alleged only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation, Compl. ¶ 24, no more than rephrasing the FLSA's formulation specifically set forth in section 207(a)(1).  Whatever the precise level of specificity that was required of the complaint, [plaintiff] at least was required to do more than repeat the language of the statute.").  Accordingly, the court GRANTS Defendants' Motion to Dismiss Plaintiffs' cause of action for violations of the FLSA.

### 8.  Unjust Enrichment

Article 2298 of the Louisiana Civil Code provides that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person.  The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.  The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule."  "The unjust enrichment remedy is 'only available to fill a gap in the law where no express remedy is

provided.'" *Walters v. MedSouth Record Management, LLC*, 38 So. 3d 241, 242 (La. 2010). *See also*, *Carriere v. Bank of Louisiana*, 702 So. 2d 648, 672 (La. 1996) ("The existence of a 'remedy' which precludes application of unjust enrichment does not connote the ability to recoup your impoverishment….It merely connotes the ability to bring the action or seek the remedy."); *AMEC Construction Management, Inc. v. Fireman's Fund Ins. Co.*, 2014 WL 5462810, at * 3 (M.D. La. Oct. 28, 2014) ("Unjust enrichment is an available remedy only when a gap in the law exists that prevents a plaintiff from pursuing a remedy for their alleged injury.").

Since Plaintiffs have alleged a breach of contract claim, it would appear that Plaintiffs are barred from also pleading unjust enrichment. However, this court has taken the position that "the liberality of Federal Rule of Civil Procedure 8 allows for pleading in the alternative even if the pleadings are inconsistent." *AMEC Construction Management, Inc. v. Fireman's Fund Ins. Co.*, 2014 WL 5462810, at * 3 (M.D. La. Oct. 28, 2014) (explaining that "[s]ince ACMI has alleged various other claims in its complaint, it would appear that ACMI may be barred from pleading unjust enrichment" but ultimately denying defendants' motion to dismiss plaintiff's unjust enrichment claim based on Fed. R. Civ. P. 8 and noting that "ACMI is allowed to plead unjust enrichment in the alternative."). As this court has previously explained, "[t]his Court has rejected the 'blanket proposition that no plaintiff may ever plead an unjust enrichment claim alongside a claim which would grant a remedy at law.' This Court has held that the law does not compel 'an election of remedies between a contractual theory and an unjust enrichment theory prior to filing a complaint.'" *U.S. ex rel. Sun Coast Contracting Services, LLC v. DQSI, LLC*, 2014 WL 7246936, at * 5 (M.D. La. Dec. 17, 2014) (quoting *Property One, Inc. v. USAgencies, LLC*, 830 F.Supp.2d 170, 181 (M.D. La. 2011) & citing *Cent. Facilities Operating Co. v. Cinemark USA, Inc.*, 2014 WL 3866086, at * 5 (M.D. La. Aug. 6, 2014)). *See also*, *Property One, Inc. v.*

*USAgencies, LLC*, 830 F.Supp.2d 170, 181 (M.D. La. 2011) ("Nothing in [*Carrier v. Bank of La.*, 702 So. 2d 648 (La. 1996)] compels an election of remedies between a contractual theory and an unjust enrichment theory prior to filing a complaint."); *Hall v. Habul*, 2014 WL 2441177, at * 5 (M.D. La. May 30, 2014) (denying defendant's motion to dismiss plaintiff's unjust enrichment claim and explaining that "[a]lthough the Court is aware that several federal district courts in Louisiana have ruled on both sides of this issue, under the facts of this case, the Court does not find that dismissal of Plaintiff's alternative claim of unjust enrichment is appropriate at this time.").

Because Plaintiffs have asserted their cause of action for unjust enrichment in the alternative, and based on this court's previous rulings allowing such alternative pleading, the court DENIES Defendants' Motion to Dismiss Plaintiffs' cause of action for unjust enrichment.

### C.  Plaintiffs' Allegations of Citizenship & Leave to Amend the Complaint

#### 1.  Plaintiffs' Complaint Does Not Adequately Allege Complete Diversity

Per their Complaint, Plaintiffs allege that this court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and also has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 "as there are matters that arise under federal laws of the United States, Federal Trade Commission Act…and alternatively, the Fair Labor Standards Act…."[78]   As discussed herein, the court finds that Plaintiffs have failed to state a claim under either the FTCA or the FLSA.

A federal court has the "duty to raise the issue of subject matter jurisdiction *sua sponte*." *H&D Tire and Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 328 (5th Cir. 2000).  Because the court finds that Plaintiffs have failed to state federal claims supporting subject

---

[78] R. Doc. 1, ¶ 2.

matter jurisdiction pursuant to 28 U.S.C. § 1331, the court must consider whether Plaintiffs' alternative basis for federal jurisdiction, 28 U.S.C. § 1332, exists. "When jurisdiction is based on diversity, we adhere strictly to the rule that citizenship of the parties must be 'distinctly and affirmatively alleged.'" *Mullins v. Testamerica, Inc.*, 300 Fed. Appx. 259, 259 (5th Cir. 2008) (quoting *Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988)). Pursuant to 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

With regard to Plaintiffs' assertion that this court has subject matter jurisdiction based on diversity, the Complaint does not adequately allege the citizenship of the Plaintiffs. Plaintiffs allege that Cooper and Brown are "residents" of the State of Louisiana.[79] Allegations of residency are insufficient to establish an individual's citizenship. *See*, *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient.").

With regard to COT, the allegations of citizenship set forth in the Complaint are also insufficient. For purposes of diversity, the citizenship of a limited liability company is determined by considering the citizenship of all its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). To properly allege the citizenship of a limited liability company, a party must identify each of the members of the limited liability company and the citizenship of each member in accordance with the requirements of § 1332(a) and (c). The same requirement applies to any member of a limited liability company which is also a limited liability company. *See*, *Turner Bros. Crane and Rigging, LLC v. Kingboard Chemical Holding Ltd.*, 2007 WL

---

[79] R. Doc. 1. Plaintiffs also allege that the Individual Defendants are residents of North Carolina. R. Doc. 1, ¶ 1. As explained herein, such allegations are insufficient to establish an individual's domicile. However, because the court finds that it lacks personal jurisdiction over the Individual Defendants, the court does not focus here on Plaintiffs' insufficient citizenship allegations regarding the Individual Defendants.

2848154, at *4-5 (M.D. La. Sept. 24, 2007) ("when partners or members are themselves entities or associations, the citizenship must be traced through however many layers of members or partners there may be, and failure to do [sic] can result in dismissal for want of jurisdiction.") (quotation and citation omitted).[80]

Here, although the citizenship of the parties has not been adequately alleged, it appears that the parties may be diverse. Under such circumstances, the court finds it appropriate to allow Plaintiffs an opportunity to properly allege this court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332. *See*, *e.g.*, *Rice v. Scudder Kemper Investments, Inc.*, 2003 WL 1846934, at * 3 (S.D.N.Y. April 8, 2003) (explaining that while dismissal of plaintiff's federal claim would normally require dismissal of the state law claims over which the court asserted supplemental jurisdiction, because it appeared that the parties may be diverse, leave to amend the complaint was appropriate).

## 2. Other Amendments to Plaintiffs' Complaint

Plaintiffs have not sought leave to amend their Complaint. Instead, in response to Defendants' Motion to Dismiss, Plaintiffs have relied on the sufficiency of their allegations as set forth in the Complaint. Under such circumstances, this court is not required to automatically

---

[80] Plaintiffs do adequately allege the citizenship of PCS because Plaintiffs allege that PCS "is a North Carolina corporation having its principal place of business" in North Carolina. R. Doc. 1, ¶ 1. *See*, *Getty Oil, Div. of Texaco v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988) (In diversity cases involving corporations, "allegations of citizenship must set forth the state of incorporation as well as the principal place of business of each corporation."). Additionally, it appears the jurisdictional threshold of $75,000.00 is met. Cooper alleges that her agreement with PCS (and later COT's agreement with PCS) "required Tammy Cooper to set up a new office in Donaldsonville, LA agency [sic] without pay or profit until PCS obtained 40% of net profit per month from the sweat equity investment of Tammy Cooper to total $25,000.00." R. Doc. 1, ¶ 20. Plaintiffs further allege that the agreement between COT and PCS was for a two-year term beginning May 1, 2014. R. Doc. 1, ¶¶ 31 & 32. Plaintiffs allege that "[c]onsistent with the contracts, [PCS] commenced payment of 40% of the monthly profits of the Donaldsonville office to Tammy Cooper in January and February 2015" and paid COT "40% of the profits of the Donaldsonville office in March and April 2015." R. Doc. 1, ¶¶ 30 & 34. Plaintiffs allege that the "last profit sharing check from PCS to Cross Over Therapy and Cooper was in late April for $13,900.81, and the 40% payments to Cross Over Therapy and Cooper would have grown." R. Doc. 1, ¶ 46. Assuming that the $13,900.81 payment was made in April 2015 and that Plaintiffs contend that similar payments should have been made pursuant to the agreements through May 1, 2016 (*i.e.*, the end of the two-year term), the jurisdictional threshold appears to be met.

34

provide Plaintiffs an opportunity to amend.  *See*, *Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994) ("Appellant argues that the district court erred in dismissing his complaint without leave to amend.  Although leave to amend should be freely given, this is not a case in which the district court denied Appellant's request to amend.  Appellant did not ask the district court for leave to amend; his brief to this Court is his first such request.  Moreover, Appellant has failed to indicate specifically how he would amend his complaint to overcome the 12(b)(6) dismissal.  Therefore, we have no basis on which to find an abuse of discretion by the district court."); *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010) ("throughout the pendency of the motions to dismiss his case, Rosenblatt urged the sufficiency of his complaint and did not seek leave to amend, despite awareness of its potential deficiencies….Rosenblatt's request now to amend, after his case has been dismissed on his now-abandoned conversion claim theory, 'rings hollow in light of h[is] failure to amend h[is] complaint as a matter of right and h[is] failure to furnish the district court with a proposed amendment' while the motions to dismiss were pending.") (citations omitted).

However, the Fifth Circuit has also instructed that "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibility [sic] result in dismissal of the complaint with prejudice to re-filing."  *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citing *Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances.").  "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  *Id.* (citing *O'Brien v. National Property Analysts Partners*, 936 F.2d 674,

675–76 (2d Cir. 1991)).  Moreover, "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

The decision to allow amendment of a party's pleadings is within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted).  In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).  As discussed above, there is no private cause of action under the FTCA, and Plaintiffs' own allegations are contrary to a finding that Louisiana securities law or the FLSA applies.  Moreover, the undersigned has significant doubts regarding Plaintiffs' ability to state a claim under the LUTPA.  However, in light of the fact that Plaintiffs have not previously been granted leave to amend their Complaint, and despite Plaintiffs' failure to seek such leave, the court will allow Plaintiffs an opportunity to amend their Complaint, if possible, to address the deficiencies addressed herein.

Because this court must determine whether it has subject matter jurisdiction, the court ORDERS Plaintiffs to file an Amended Complaint, within twenty-one (21) days of this Ruling setting forth: (1) the domicile of the individual plaintiffs; and (2) the citizenship of each of the

member(s) of Cross Over Therapy, LLC in accordance with the requirements of § 1332(a) and (c). To the extent Plaintiffs believe the deficiencies discussed above with regard to the court's rulings pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2) can be remedied, Plaintiffs may also amend the substantive allegations set forth in their Complaint.

### III.     Conclusion

For the reasons set forth herein, the court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claims against William Bullock, Monica Lewis, and Kim Roundtree (the "Individual Defendants") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  **IT IS HEREBY ORDERED** that Plaintiffs' claims against the Individual Defendants are **DISMISSED** for lack of personal jurisdiction.

The court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claims under the Louisiana Unfair Trade Practices Act, the Federal Trade Commission Act, Louisiana Securities Law, and the Fair Labor Standards Act.  **IT IS HEREBY ORDERED** that Plaintiffs' claims under the Louisiana Unfair Trade Practices Act, the Federal Trade Commission Act, Louisiana Securities Law, and the Fair Labor Standards Act are **DISMISSED**.

The court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' breach of contract, interference with contract, and conversion claims against the Individual Defendants.  **IT IS HEREBY ORDERED** that Plaintiffs' breach of contract, interference with contract, and conversion claims against the Individual Defendants are **DISMISSED**.

The court **DENIES** Defendants' Motion to Dismiss Plaintiffs' causes of action for conversion and unjust enrichment against Primary Care Solutions, Inc.[81]

---

[81] Defendants did not seek dismissal of Plaintiffs' cause of action for breach of contract against PCS, and that remains a live claim in this suit.

**IT IS FURTHER ORDERED** that Plaintiffs shall file an Amended Complaint, within twenty-one (21) days of this Ruling and Order setting forth: (1) the domicile of the individual plaintiffs; and (2) the citizenship of each of the member(s) of Cross Over Therapy, LLC in accordance with the requirements of § 1332(a) and (c).   To the extent Plaintiffs believe the deficiencies discussed herein with regard to the court's rulings pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2) can be remedied, Plaintiffs may also amend the substantive allegations set forth in their Complaint.  **IT IS FURTHER ORDERED** that Plaintiffs' Amended Complaint may be filed within twenty-one (21) days of this Ruling and Order without further leave of court.

**IT IS FURTHER ORDERED** that a scheduling conference in this matter is hereby set for **May 25, 2017 at 10:00 a.m.**  The parties are **ORDERED** to file an Amended Joint Status Report by May 11, 2017.

Signed in Baton Rouge, Louisiana, on March 21, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

38